2015-1525, -1526, -1527, -1528

# United States Court of Appeals
# for the Federal Circuit

CLEAR WITH COMPUTERS LLC,

Plaintiff-Appellant,

v.

ALTEC INDUSTRIES INC., BAB BOY MOWERS INC., BAB BOY INC., THE MEN'S WEARHOUSE, INC., VOLVO CONSTRUCTION EQUIPMENT NORTH AMERICA LLC

Defendants-Appellees,

*Appeal from the United States District Court for the Eastern District of Texas in case nos. 6:14-cv-71-JRG; 6:14-cv-79-JRG, 6:14-cv-81-JRG; and 6:14-cv-89-JRG, Judge Rodney Gilstrap*

## PLAINTIFF-APPELLANT'S OPENING BRIEF

June 5, 2015

*/s/ John J. Edmonds*
John J. Edmonds
COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone: (713) 364-5291
Facsimile: (832) 415-2535
Email: jedmonds@cepiplaw.com

*Attorney for Plaintiff-Appellant*
CLEAR WITH COMPUTERS LLC

## CERTIFICATE OF INTEREST

Pursuant to Federal Rule of Appellate Procedure 26.1 and Federal Circuit Rule 47.4, undersigned counsel for Plaintiff-Appellant hereby certifies that:

1.     The full names of every party or amicus represented by me is:

Clear with Computers, LLC

2.     The names of the real parties in interest (if the party named in the caption is not the real party in interest) represented by me is:

None.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Appellant's parent company is Legacy Patent Holdings, LLC.  No publicly held corporation owns 10% or more of Appellant's stock.

4.     The names of all law firms and the partners or associates that appeared for any of the parties represented by me in the District Court or are expected to appear in this Court are:

John N. Edmonds of COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC;
Richard C. Weinblatt of STAMOULIS & WEINBLATT LLC;
Andrew W. Spangler of SPANGLER LAW, PC; and
Aarika K. McCloskey, formerly of SPANGLER LAW, PC.

Dated: June 5, 2015

/s/ John J. Edmonds
John J. Edmonds

T<span>ABLE OF</span> C<span>ONTENTS</span>

CERTIFICATE OF INTEREST ............................................................................. i

TABLE OF CONTENTS...................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iv

    Cases .............................................................. **Error! Bookmark not defined.**

    Statutes.......................................................... **Error! Bookmark not defined.**

STATEMENT OF RELATED CASES ................................................................ vi

I.    STATEMENT OF JURISDICTION..................................................................1

II.   STATEMENT OF THE ISSUES......................................................................2

III.   STATEMENT OF THE CASE ........................................................................3

IV.  STATEMENT OF THE FACTS ......................................................................4

    A.   The Patents-in-Suit. ...............................................................................4

    B.   The History of the '739 Patent. .............................................................11

    C.   The Proceedings Below. ........................................................................12

V.    SUMMARY OF THE ARGUMENT..............................................................12

VI.  APPLICABLE LEGAL PRINCIPLES .........................................................13

    A.   Standard of Review. ..............................................................................13

    B.   Legal Framework for Motions to Dismiss on the Pleadings......................13

    C.   Legal Framework for the § 101 Analysis....................................................14

VII.   ARGUMENT ................................................................................................18

    A.   The District Court erred in finding the '445 claims to be directed to an abstract idea. ....................................................................................................18

    B.   The District Court Erred in Making an Unsupported Holding that the Subject Claims Lacked "Inventive Concept" or "Meaningful Limitations," Were "Well-Understood, Routine, Conventional Activity" and/or did not "Add Enough" to Make the Claims Patent-Eligible.  This Error is Especially Troublesome Given the History of Claim 1 of the '739 Patent Withstanding Challenges to its Novelty and Non-Obviousness. ......................................................................................21

    C.   The District Court Erred in Disregarding Meaningful Claim Limitation when it "Reduced" the Claims to their "Conceptual Elements." ...................................32

    D.   Even if the District Court was Correct in Distilling an Abstract Idea from '739 claim 1 and '776 claim 61, the Abstract Idea that it Distilled was Erroneously Broad, thus Causing the District Court to Reach Erroneous Conclusions Regarding Unpatentability...........................................................35

    E.   The District Court Erred in Holding that the Steps Performed by the Claimed Computer Elements "could easily be performed by a human." .........................36

    F.   The District Court Erred in Holding that Claims Embody "longstanding commercial practices," Including of the Type at Issue in *Alice* and *Bilski*. .......37

    G.   The District Court erred in finding that the subject claims fail to satisfy the machine-or-transformation ("MOT") test..........................................................40

H.   The Asserted Claims Are Patent-Eligible Because They Do Not Preempt A Natural Law Or Abstract Idea.............................................................................44

VIII.   CONCLUSION AND PRAYER.................................................................47

VII.   CERTIFICATE OF SERVICE...................................................................49

VIII.   CERTIFICATE   OF   COMPLIANCE   WITH   TYPE-VOLUME LIMITATION,   TYPE-FACE   REQUIREMENTS,   AND   TYPE-STYLE REQUIREMENTS................................................................................................50

ADDENDUM ........................................................................................................51

# TABLE OF AUTHORITIES

## CASES

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014)15, 16, 17, 18, 21, 22, 26, 28, 35, 39, 43, 44, 45, 46

*Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377 (Fed. Cir. 2011) ................................... 13

*Ameranth, Inc. v. Genesis Gaming Solutions, Inc.,* Case No. SACV 11- 00189 AG (RNBx) (C.D. Cal.) (Nov. 12, 2014) (D.I. 215) ................................................................................... 33

*Ameritox, Ltd.  v. Millenium Health*, LLC, 3:13-cv-00832-wmc, Doc No. 440 (W.D. Wis. April 24, 2015) ................................................................................................................ 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 14

*Association for Molecular Pathology v. Myriad Genetics*, 133 S. Ct. 2107 (2013) ..................... 47

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012) ................................................................................................................ 22

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 14

*Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ........................................................ 17, 22, 39, 40

*California Institute of Technology v. Hughes Communications Inc.*, 59 F.Supp.3d 974 (C.D.Cal. 2014) ................................................................................................................ 34

*Clear with Computers, LLC v. Hyundai Motor America, Inc.*, 496 Fed.Appx. 88 (Fed. Cir. 2013) ................................................................................................................ 12

*Clear with Computers, LLC v. Hyundai Motor America, Inc.*, No. 6:09-CV-479, 2012 WL 8144915 (E.D. Tex. Jan. 9, 2012) ................................................................... 11, 29

*Cogent Med., Inc. v. Elsevier Inc.,* Nos. 13–4479, 4483, 4486, —— F.Supp.3d ——, —— n. 3, 2014 WL 4966326 (N.D.Cal. Sept. 30, 2014) ........................................................... 30

*Commil USA, LLC v. Cisco Systems, Inc.*, __ S.Ct. __, 2015 WL 2456617 (May 26, 2015) ...... 22

*CyberFone Systems, LLC v. Cellco P'ship*, 885 F. Supp. 2d 710 (D. Del. 2012) ....................... 35

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ........................... 28, 29

*Dealertrack, Inc. v. Huber*, 674 F.3d 1315 (Fed. Cir. 2012) ...................................................... 16

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980) ......................................................................... 14

*Diamond v. Diehr*, 450 U.S. 175, 101 S.Ct. 1048, 67 L. Ed. 2d 155 (1981).. 17, 18, 22, 26, 34, 35

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................................................... 14

*Gottschalk v. Benson*, 409 U.S. 63 (1972) .......................................................................... 18, 43

*Hitt v. City of Pasadena*, 561 F.2d 606 (5th Cir. 1977) ............................................................. 14

*Hyundai Motor America, Inc. v. Clear with Computers, LLC*, 134 S.Ct. 619 (2013) .................. 12

*In re Alappat,* 33 F.3d 1526 (Fed. Cir. 1994) ............................................................................. 41

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) ................................................................................ 17

*In re Bilski*, 545 F.3d 943 (Fed. Cir. 2008) (en banc) ................................................................ 43

*In re Ferguson*, 558 F.3d 1359 (Fed. Cir. 2009) ........................................................................ 40

*King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010) ....................................... 17

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012)15, 16, 18, 21, 22, 30, 31, 35, 44, 45

*Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364 (Fed. Cir. 2005) ....... 38, 39

*Oleksy v. Gen. Elec. Co.*, No. 06-C-01245, 2013 WL 3233259 (N.D. Ill. June 26, 2013) ........... 34

*Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859 (Fed. Cir. 2010) ........................... 16, 17

*SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319 (Fed. Cir. 2010) .................................... 41

*SRAM Corp. v. ADII Eng'g, Inc.*, 465 F.3d 1351 (Fed. Cir. 2006) ............................................. 14

*TQP Development, LLC v. Intuit Inc.*, 2014 WL 651935, 2:12–CV–180–WCB (E.D. Tex. Feb. 19, 2014) (Bryson, J.) ............................................................................................... 37

*Zoltek Corp. v. United States*, No. 96-166 C, 2014 WL 1279152 (Fed. Cl. Mar. 31, 2014)........ 31

## STATUTES

35 U.S.C. § 101 ............................................................................................................ 14

35 U.S.C. § 102 ............................................................................................................ 12

35 U.S.C. § 103 ............................................................................................................ 12

35 U.S.C. § 282 ............................................................................................................ 14

Fed. R. App. P. 4 ............................................................................................................. 1

## STATEMENT OF RELATED CASES

Other than the related cases consolidated for this appeal, there have been no other appeals before this or any other appellate court stemming from the civil action giving rise to this appeal.

## I.    STATEMENT OF JURISDICTION

Plaintiff-Appellant, Clear With Computers, LLC ("CWC"), brings this Appeal from the United States District Court for the Eastern District of Texas (the "District Court") to the United States Court of Appeals for the Federal Circuit in accordance with 28 U.S.C. § 1295(a)(1). *See* Fed. R. App. P. 4(a)(4)(B)(i).

This is a case arising under the United States Patent Laws and jurisdiction exists in accordance with and pursuant to 28 U.S.C. §§ 1338(a) and 1400(b).  CWC is appealing the order of the District Court finding the claims of the patents-in-suit to be unpatentable under 35 U.S.C. § 101. These orders are final because final judgment was entered in each of these cases on April 25, 2014. (A0001; A0014; A0633; A0646; A0812; A0825; A0996; A1009).

This appeal has been timely taken within  thirty (30) days of the entry of final judgment pursuant to 28 U.S.C. § 2107. (A0595, A0630, A0806, A0809, A0990, A0993, A1314; A1317).  The Amended Final judgments were entered on April 25, 2014 (A0001, A0633, A0812, A0996), and CWC's amended notices of appeal were filed on May 7, 2014. (A0595, A0630, A0992, A0993, A1317).

## II.    STATEMENT OF THE ISSUES

1. Whether the District Court erred in finding claim 1 of the '739 patent and claim 61 of the '776 patent unpatentable under 35 U.S.C. § 101;

2. Whether the District Court erred in finding claim 1 of the '739 patent and claim 61 of the '776 patent to be directed to an abstract idea; and, alternatively, whether the District Court erred in defining the abstract idea too narrowly;

3. Whether the District Court erred in finding insufficient meaningful limitations or inventive concept for transforming any claimed abstract idea into a patent-eligible application;

4. Whether the District Court erred in disregarding meaningful and inventive claim limtiations when it "reduced" the claims to their "conceptual elements";

5. Whether the District Court erred in applying the machine or transformation test, including when it failed to consider whether the subject claims involved a transformation of images and text into customized proposals and single composite visual images; and

6. Whether District Court erred in failing to address the issue of preemption; and alternatively, whether the District Court's Section 101 ruling should be reversed because the subject claims do not preempt a natural law or abstact idea.

## III.   STATEMENT OF THE CASE

This matter is the consolidated appeal of four patent infringement suits involving U.S. Patent Nos. 5,625,776 (the "'776 patent") and 7,606,739 (the "'739 patent"), in which the District Court rendered judgment on the pleadings that claim 61 of the '776 patent and claim 1 of the '739 patent were unpatentable under 35 U.S.C. § 101 because they are directed to abstract ideas. Following entry of judgment and an amended judgment to ensure finality, (A0001; A0014; A0633; A0646; A0812; A0825; A0996; A1009), CWC timely appealed to this Court. (A0595, A0630, A0806, A0809, A0990, A0993, A1314; A1317).

## IV.    STATEMENT OF THE FACTS

### A. The Patents-in-Suit.

The '739 patent, filed _____, (A0026-A0096) is continuation of U.S. patent application serial no. 08/823,534, which is a continuation of U.S. application, serial no. 08/596,575, filed February 5, 1996, now U.S. Pat. No. 5,615,342, which is a continuation of U.S. patent application, serial no. 07/878,602, filed on May 5, 1992, now U.S. Pat. No. 5,493,490. (A0026). The '776 patent, filed ____, (A0097-A0162) is a continuation-in-part of the same May 5, 1992 U.S. patent application, serial no. 07/878,602. (A0097).   The specifications of the '739 and '776 patents are very similar, with the '776 specification, like the original priority application, being directed in part to embodiments comprising computer based systems and computer implemented methods for automatically compiling certain customized proposals for selling computers, related peripherals, and copy machines, and the '739 specification being directed in part to embodiments comprising computer programs, methods of generating with a computer system, and computer systems for dynamically building and filling in templates for certain single composite visual outputs for selling cars. *Compare* '776/1:20-49[1] *with* '739/1:26-50.

In the prior art, many products were illustrated to customers by preprinted

---

[1] "'776/1:20-49" refers to Column, 1, lines 20-49 of the '776 patent.

brochures. '776/1:21-23.[2]  These brochures contain photographs of the product potentially in a variety of predetermined settings. '776/1:41-43. Next to the photographs, the brochures usually contain generic textual descriptions of standard lists of options for the product. '776/1:43-45.  The preprinted brochures contain all of these different background settings for the product and generic information in an attempt to appeal to any potential purchaser. '776/1:50-54.  For example, one customer may anticipate using a product for work, and the brochure contains a photograph of the computer used in an office environment in order to appeal to that customer and influence that customer in his or her decision to purchase the product. '776/1:54-57.  Another customer may want to use the product at home, and the photograph in the brochure of the computer in a home environment is designed to appeal to that customer. '776/1:57-60.

Traditionally, every potential purchaser of that product receives the same brochure. '776/1:38-39.  The generic nature of such preprinted brochures, however, may have a negative impact on the customer's ultimate decision of whether to purchase and thus are often not persuasive. '776/1:35-38.  In containing all of this varied and generic information in an attempt to be "all things to every customer," the preprinted brochures actually are of limited value to any particular customer.

---

[2] As the specifications are almost identical in most respects, for ease of reference this Brief will primarily cite the '776 specification; however, such citations should be deemed cross-referenced to their corresponding citations in the '739 patent.

'776/2:5-8.    The brochures are not customer specific and, therefore, are not particularly appealing or persuasive for any customer. '776/2:5-8. The typical brochure contains much information that is of no value or interest to a particular customer due to the varied and generic nature of the product pictures and textual descriptions. '776/2:10-13. Furthermore, these preprinted brochures are expensive to produce. '776/2:13-14.

Embodiments of the claimed invention solve these problems and more by utilizing a computer-based system to dynamically create customized proposals for potential purchasers of a product. '776/2:18-21. Because each proposal is customized, it will have a much more persuasive effect in selling the product. '776/2:39-41.   Also, if any information about the product changes, the system information stored in a database may be simply and efficiently changed in order to accommodate the new information. '776/41-44.

In certain embodiments, database 50 and/or 59 electronically stores a plurality of environment pictures 51-54, product pictures, 56 and text segments that correspond to various pictures. '776/5:26-28.   FIG. 1B illustrates an electronic template for creating a page in a customized proposal, '776/5:35-36, in part as follows:



The system may query a user to determine a particular customer's needs and interests. '776/5:37-39.  Based upon the answers to the queries, the system may "fill in" the exemplary template 60 to customize a proposal for the customer. '776/5:39-41.  For example, if the customer has an interest in using a computer, computer peripheral, or copy machine for office or home, the system may choose a picture of an office environment 51 or home environment 52 respectively to use as the background or environment 62 in picture 61 of template 60. '776/5:41-46.  Likewise, if the customer has an interest in using the computer or computer peripheral for college, the system may choose a campus environment 53. '776/5:46-.   As yet another example, if the customer has an interest in purchasing a laptop for use while traveling, the system may choose an interior airplane environment 54. '776/5:49-51.  Within the environment 62, the system places a product 63 by selecting one of the plurality of product pictures 56 based upon the customer's answers. '776/5:51-54.

Accordingly, embodiments of the system can use stored pictures in the database as building blocks for filling in the template. '776/5:66-6:1.  Such systems

establish a customer profile based on the customer's answers to queries. '776/6:1-2.

They then use the profile to "build" the empty frames, such as picture 61, in template 60. '776/6:2-5.

The approach of using picture building blocks provides for much versatility and the capability to customize a proposal. '776/6:5-7.  Products may be shown in any one of a variety of environments by simply selecting the appropriate picture building blocks. '776/6:7-9.  Likewise, any combination of options may be shown on a particular product by selecting the appropriate part picture building blocks. '776/6:9-11.  Each combination of pictures for a finished template need not be pre-stored, since the system dynamically builds a template. '776/6:11-13.  Also, the system provides further advantages by allowing easy change of options by loading and storing new pictures in the picture database. '776/6:13-15.  The system, therefore, provides for customized proposals that are up-to-date and may accommodate changes in available options. '776/6:20-22.

Preferred computer system 100 comprises an operatively connected active database 103, a static database 105, a user interface 102, a selection device 101, a report generator 104, an active database 103 and a static database. '776/1:33-37.  The active database 103 may electronically store proposal-related customer and other information. '776/6:46-57; 8:15-18.  The static database 105 may electronically store a plurality of environment pictures 122, and a plurality of environment text 124, both

of which are related to the environment in which the product may be used; a plurality of product pictures 126, and a plurality of product text 128, both of which are related to features and benefits of the product; a plurality of product specifications 121 which relate to the technical details of the product; a plurality of price specifications 125 which determine the price of the product; and a plurality of product descriptions 131 which describe the various products.. '776/8:56-9:5.   An exemplary diagram comprising certain preferred aspects of the invention is as follows:



FIG. 19

In certain embodiments user interface 102 is the means by which one may interactively input predetermined answers to predetermined queries, the predetermined answers corresponding to the individual customer who is to receive the proposal. '776/9:35-42.

As noted above, computer system 100 may comprise a report generator 104.

'776/11:6-2. The report generator 104 may comprise mechanism 262 which comprises means for processing and generating the customized proposal. '776/11:7-10. The report generator 104 preferably includes the following mechanisms: mechanism 266, which queries the static database 105; mechanism 274 for locating and retrieving data from the static database 105; a dealer personalization mechanism 280 for generating a printed proposal automatically customized for a particular dealer; a customer personalization mechanism 282 for generating a printed proposal automatically personalized for a particular customer; and mechanism 278 for generating a printed proposal in a plurality of colors. '776/12:30-39. The report generator 104 may be operatively interconnected to the active database 103, to the static database 105, to the report database 106, to the selection device 101, and to the user interface mechanism 102. '776/11:11-14.

The user may decide to generate a customized proposal to an individual customer relating to the individual customer's interest in a product, the product being characterized by a variety of distinctive features. '776/11:15-18. The customized proposal may include one or more pages comprising the information collected during the process of dealing on the purchase of the product. '776/11:18-21.

The report generator 104 may include a mechanism 264, which queries the active database 103. '776/12:14-16. The report generator 104 may include a mechanism 272 for locating and retrieving data from the active database 103.

'776/12:16-18. This active data typically includes the customer and product information entered by the user via the user interface 102, the information which comprises the predetermined answers to predetermined questions, the predetermined answers corresponding to the individual customer who is to receive the proposal. '776/12:19-24. The report generator 104 preferably provides a mechanism 285 for linking these predetermined answers (active data) with the predetermined product pictures and text (static data) related to the individual features, benefits, and environments that are of particular interest to the individual customer. '776/12:24-29. These predetermined pictures and text may be obtained from the static database 105. '776/12:29-30.

**B. The History of the '739 Patent.**

The history of the '739 patent is highly relevant to the Court's analysis. The '739 patent, including claim 1, was previously litigated in the District Court against Hyundai, where Hyundai's invalidity arguments were rejected and the jury awarded CWC $11,575,579 in damages. In the *Hyundai* litigation, the defendants moved for judgment as a matter of law ("JMOL") of invalidity, focusing on four limitations of the '739 claims that Hyundai asserted were obvious or anticipated: "automatically selecting"; "single composite visual output"; "selection device"; and "dynamically building a template." *Clear with Computers, LLC v. Hyundai Motor America, Inc.*, No. 6:09-CV-479, 2012 WL 8144915 (E.D. Tex. Jan. 9, 2012); (A0392-A0418).

The District Court rejected Hyundai's motion for JMOL for invalidity under 35 U.S.C. §§ 102 and 103. *Id.* The verdict was affirmed in a *per curiam* opinion by this Court. *Clear with Computers, LLC v. Hyundai Motor America, Inc.*, 496 Fed.Appx. 88 (Fed. Cir. 2013). The Supreme Court of the United States denied a petition for *certiorari*. *Hyundai Motor America, Inc. v. Clear with Computers, LLC*, 134 S.Ct. 619 (2013).

### C. The Proceedings Below.

Shortly after this suit was filed, Appellees brought and/or joined in various motions asserting invalidity of the claim 1 of the '739 patent and claim 61 of the ''776 patent. CWC opposed these motions on all grounds asserted. (A0352-A0353, A0354-A0355, A0367-A0377, A0500-A0530, A0572-A0586, A1191-A1231, A1295-A1297). In its Orders subject to this appeal, the District Court erroneously held that "the asserted claims are directed to the abstract idea of creating a customized sales proposal for a customer" and determined them to be unpatentable under Section 101. (A0002-A0013).

### V.    SUMMARY OF THE ARGUMENT

The District Court erred in finding claim 1 of the '739 patent and claim 61 of the '776 patent to be unpatentable under 35 U.S.C. § 101. In this regard, the District Court committed reversible error in multiple regards. First, the District Court erred in finding claim 1 of the '739 patent and claim 61 of the '776 patent to be directed

to an abstract idea; and, additionally and alternatively, the District Court erred in defining the abstract idea too narrowly.  Second, the District Court erred in finding insufficient meaningful limitations or inventive concept for transforming any claimed abstract idea into patent-eligible subject matter.  Third, the District Court erred in disregarding meaningful and inventive claim limitations when it "reduced" the claims to their "conceptual elements."  Fourth, the District Court erred in applying the machine or transformation test, including when it failed to consider whether the subject claims involved a transformation of images and text into customized proposals and single composite visual images.  Finally, the District Court erred in failing to address the issue of preemption in the context of patentability under Section 101; and alternatively, the District Court's Section 101 ruling should be reversed since the subject claims do not preempt a natural law or abstact idea.

## VI.    Applicable Legal Principles

### A.    Standard of Review.

This Court reviews this matter *de novo*. *See Allergan, Inc. v. Athena Cosmetics, Inc.*, 640 F.3d 1377, 1380 (Fed. Cir. 2011).

### B. Legal Framework for Motions to Dismiss on the Pleadings.

When deciding motions to dismiss, courts look at the allegations of the complaint to determine if "enough facts to state a claim to relief that is plausible on

its face" are alleged, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and a claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). Courts also are not to dismiss complaints "unless 'it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted.'" *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977).

### C. Legal Framework for the § 101 Analysis.

"A patent shall be presumed valid." 35 U.S.C. § 282. A party seeking to invalidate a patent "must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *SRAM Corp. v. ADII Eng'g, Inc.*, 465 F.3d 1351, 1357 (Fed. Cir. 2006).

35 U.S.C. § 101 defines patentable subject matter broadly. *See Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). While not explicitly carved out in the statute, the Supreme Court has read an implicit exception into § 101: laws of nature,

natural phenomena, and abstract ideas are patent-ineligible. *See Alice Corp. Pty. Ltd. v. CLS Bank Intl'l*, 134 S. Ct. 2347, 2354 (2014). To determine whether a claim falls within this implicit exception, courts conduct a two-part analysis.

First, courts "determine whether the claims at issue are directed to one of those patent ineligible concepts." *Alice Corp.*, 134 S. Ct. at 2355; *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296-97 (2012). The first step of the analysis explained in *Alice* does not simply ask whether an ineligible concept can be identified in the claim. The Supreme Court expressly acknowledges that "[a]t some level, all inventions... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice Corp.*, 134 S. Ct. at 2354 (internal quotations omitted). Moreover, the Supreme Court described the two-step analysis as "a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355. This statement recognizes that all patents either claim "laws of nature, natural phenomena, and abstract ideas" or applications of those concepts. *See id.* Accordingly, when the very next sentence in *Alice* states "[f]irst, we determine *whether* the claims at issue are directed to one of those patent-ineligible concepts," *see id.* (emphasis added), the Supreme Court is not encouraging courts to simply ask whether a law of nature or abstract idea can be found in the claim because the Court acknowledged that would be the case for all claims. Rather,

the proper analysis asks what—in a global sense—are the asserted claims "directed to." For example, in *Alice*, the Supreme Court concluded that the claims at issue were "drawn to the abstract idea of intermediated settlement." *See id.*

This Court has held that "for abstractness to invalidate a claim it must 'exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act.'" *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) (quoting *Research Corp. Techs. v. Microsoft Corp.*, 627 F.3d 859, 868 (Fed. Cir. 2010)).

Second, if the claims are directed to a patent ineligible concept, then the courts "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice Corp.*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1297-98. This second step addresses whether the claims contain "meaningful limitations" or an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice Corp.*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1294. "Inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract that they override the statutory language and framework of the Patent

Act." *Research Corp. Techs.*, 627 F.3d at 869.

The appropriate analysis of whether a claim satisfies § 101 requires viewing the claim as a whole, *Diamond v. Diehr*, 450 U.S. 175, 101 S.Ct. 1048, 67 L. Ed. 2d 155 (1981), and not individual limitations. *King Pharms., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1277 (Fed. Cir. 2010).  "[I]t is irrelevant that any individual step or limitation of such processes by itself would be unpatentable under § 101." *In re Bilski*, 545 F.3d 943, 958 (Fed. Cir. 2008) ("*Bilski I*"). "It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis. This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made." *Diehr*, 450 U.S. at 188.

"[T]he concern that drives" § 101 jurisprudence is "one of pre-emption." *Alice*, 134 S. Ct. at 2354; *see also Bilski v. Kappos*, 130 S. Ct. 3218, 3231 (2010) (finding claims covered ineligible subject matter because they "would pre-empt use of this approach in all fields, and would effectively grant a monopoly over an abstract idea."). Claims – even ones directed to abstract ideas – are patentable where the claim (i) contains an "inventive concept," *Alice*, 134 S. Ct. at 2357; (ii) is "more than a drafting effort designed to monopolize" the abstract idea, *id.* at 2358 (quotation omitted); (iii) "improve[s] an existing technological process," *id.*;

or (iv) supplies a "'new and useful application' of the idea." *Id.* at 2357 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

## VII. ARGUMENT

### A. The District Court erred in finding the '445 claims to be directed to an abstract idea.

The first step in the patentable subject matter analysis is to determine whether the subject claims as a whole are "directed to" a patent-ineligible concept. *Alice Corp.*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1296-97; *Diehr*, 450 U.S.at 188. Contrary to the District Court's holding, (A006), the asserted claims are not "directed to" an abstract idea. Properly understood, the claimed technology constitutes the application of certain ideas, and it necessitates the use of discrete computer hardware and software components configured and programmed in a particular way that enable performance of the specified functions.

There is nothing abstract about claim 1 of the '739 patent. Including when viewed as a whole, it has tangible, inventive, unconventional, novel and meaningful limitations comprising a tangible *computer program* comprising tangible *instructions* that cause a tangible *processor* to automatically select, in response to received answers, a tangible *image of a product*, a tangible *image of an environment in which the product is to be used*, and a tangible *text segment*; with the *processor* integrating the images and text segment into a tangible *customized proposal* for the

sale of the product, such that a tangible *single composite visual output*[3] shows the product in the product environment along with the text segment; wherein the tangible *single composite visual output* is generated by a tangible *selection device*[4] operatively connected to a tangible *active database*[5] storing customer information obtained via a *user interface*, and operatively connected to a tangible *static database*,[6] the tangible *processor* dynamically building a tangible template and utilizing the tangible *selection device* to fill in the tangible *template* to produce the tangible *single composite visual output*.  Tangible, non-abstract aspects of claim 1 of the '739 patent comprise a *computer program* comprising tangible *instructions* that cause a tangible *processor* to perform the claimed steps, and they further comprise a tangible, non-abstract *image of a product*, *image of an environment*, *text*

---

[3] In a prior case, the U.S. District Court for the Eastern District of Texas (the "EDTX Court") construed the term "single composite visual output" in claim 1 of the '739 patent to mean "a single image that includes the selected text and an image of a product in a product environment." (A0452-A0471 at A0460).

[4] In a prior case, the EDTX Court construed the term "selection device" in claim 1 of the '739 patent (i.e., the "… the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual image…" as a "computer code data structure, which is preferably an object oriented programming data structure known as an 'object.'" (A0465-A069 at A0469).

[5] In a prior case, the EDTX Court construed "database" as "a collection of logically related data stored together in one or more computerized files," and it construed "active database" in claim 1 of the '739 patent as "a database that is alterable based on user input." (A0463-A0463).

[6] In a prior case, the EDTX Court had construed the term "static database" in claim 1 of the '739 patent as "a database that is not alterable during generation of a composite visual output." (A0463-A0464).

*segment* comprised of a *description of the product specifications and performances*, a *customized proposal*, a *single composite visual output*, a *selection device*, an *active database*, *customer information* obtained via a *user interface*; a *static database*, and a *template*.

Likewise, there is nothing abstract about claim 61 of the '776 patent. Including when viewed as a whole, it has specific tangible, inventive, unconventional, novel and meaningful limitations comprising a *computer implemented* method of generating a tangible *customized proposal* comprising a *computer* presenting the customer with a plurality of questions relating to features and uses of the equipment, the *computer* receiving in the computer a plurality of answers to the questions, the *computer* selecting and retrieving a stored tangible *equipment picture,* tangible *equipment environment picture*, and tangible *text segment* in response to at least one of the answers; and the *computer* automatically compiling said tangible *pictures* and *text segments* into a tangible *customized proposal*.    Tangible, non-abstract aspects of claim 1 comprise a *computer implemented* method comprising a *computer* receiving information identifying a customer's desired equipment features and uses, the *computer* presenting the customer with a plurality of questions relating to features and uses of the equipment and receiving answers to such questions, the *computer* storing *equipment pictures*, *equipment environment pictures*, and *text segments*; the *computer* selecting a

particular *equipment picture*, *equipment environment picture*, and *text segment* in response to at least one of the answers; and the c*omputer* automatically compiling the gathered information into a *customized proposal*.

Any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed. Because the subject claims are not, including as a whole, directed to an abstract idea, the District Court's Orders must be reversed.

**B. The District Court Erred in Making an Unsupported Holding that the Subject Claims Lacked "Inventive Concept" or "Meaningful Limitations," Were "Well-Understood, Routine, Conventional Activity" and/or did not "Add Enough" to Make the Claims Patent-Eligible. This Error is Especially Troublesome Given the History of Claim 1 of the '739 Patent Withstanding Challenges to its Novelty and Non-Obviousness.**

Under *Alice,* a claim directed to an abstract idea may nonetheless be patentable if "additional elements" supply an "inventive concept" in the physical realm of things and acts—a "new and useful application" of the ineligible matter in the physical realm—that ensures that the patent is directed to something "significantly more than" the ineligible matter itself. *Alice*, 134 S.Ct. at 2355, 2357. This "inventive concept" was referred to as "meaningful limitations" in the *Mayo* case (*Mayo*, 132 S.Ct. at 1294, 1299-1300). The correct test, which was not properly applied by the District Court, is whether "additional substantive limitations ... narrow, confine, or otherwise tie down the claim so that, in practical terms, it does

not cover the full abstract idea itself." *Alice Corp.*, 717 F.3d at 1282 (citing *Mayo*, 132 S.Ct. at 1300; *Bilski*, 130 S.Ct. at 3231; *Diehr*, 101 S.Ct. 1048).

The District Court erred in holding that the claim elements lacked "inventive concept" or "meaningful limitations," were "well-understood, routine, conventional activity," and/or did not "add enough" to make the claims patent-eligible. (A0009-A0010). One fundamental flaw in the District Court's opinion is that it was not based on any evidence at all. Rather, it was based upon arguments made by counsel for the litigants. The Supreme Court recently re-affirmed that patents can be held invalid only by "clear and convincing evidence." *Commil USA, LLC v. Cisco Systems, Inc.*, __ S.Ct. __, 2015 WL 2456617, * (May 26, 2015). Without any evidence, much less clear and convincing evidence, in the record of this case, the District Court's holdings noted above, which would necessarily need to be based upon facts, must be overturned.

The District Court's erroneous conclusions were based in part upon its erroneous failure to appreciate that a computer is integral to both claim 1 of the '739 patent and claim 61 of the '776 patent. *See Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("To salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations or computations could not.").

A computer is integral to claim 1 of the '739 patent, including because it is directed to a specific *computer program* comprising instructions that cause a *processor* to *automatically* select, in response to received answers, an image of a product, an image of an environment in which the product is to be used, and a text segment; with the *processor* integrating the images and text segment into a customized proposal for the sale of the product such that a *single composite visual output* shows the product in the product environment along with the text segment; wherein the *single composite visual output* is generated by a *selection device* operatively connected to an *active database* storing customer information obtained via a *user interface*, and operatively connected to a *static database*, the *processor dynamically* building a template and utilizing the selection device to fill in the template to produce the *single composite visual output*.

Likewise, a computer is integral to claim 61 of the '776 patent, including because it is directed to a specific *computer implemented* method of generating a customized proposal comprising a *computer* presenting the customer with a plurality of questions relating to features and uses of the equipment, the *computer* receiving in the computer a plurality of answers to the questions, the answers specifying the customer's desired equipment features and uses; the *computer* selecting and retrieving a stored equipment picture, equipment environment picture, and text segment in response to at least one of the answers; and the *computer automatically*

*compiling* said pictures and text segments into a customized proposal.

The computer in the challenged claims performs an integral role including because it "automatically" compiles the gathered equipment information into a customized proposal" ('776 patent, claim 61); "automatically" selects images of the product and environment and text that is of particular interest to the customer ('739 patent, claim 1; "integrat[es]" the selected images and text into a "single composite visual output ('739 patent, claim 1); and "dynamically build[s] a template" ('739 patent, claim 1).

The District Court's erroneous holding that the claim elements lacked "inventive concept" or "meaningful limitations," were "well-understood, routine, conventional activity," and/or did not "add enough" to make the claims patent-eligible, are apparently based upon its erroneous and unsupported conclusion that a "general purpose computer with minimal programming" can perform the claimed functions automatically and dynamically and that a "generic computer implementation" can implement the claimed inventions.  Although general purpose computers can perform some functions automatically or dynamically, there is no evidence in the record, or cited in the District Court's opinion, to support such a conclusion that general purpose or generic computers can perform the claimed functions, including (1) the automatic compiling of gathered equipment pictures, equipment environment pictures and text segments of claim 61 of the '776 patent,

or (2) the dynamically building of a template utilizing the selection device to fill in the template to produce the single composite visual output that shows the that shows an automatically selected product in the automatically selected product environment along with an automatically selected text segment. In fact the specification goes into great detail about how objected oriented programming, which was "fairly new" ('776/4:41) as of the May 1992 priority date, could be used to implement the claimed invention. ('776/4:39-64, 6:45-8:52).

Further, the District Court's observation that "static" and "active" databases are generic computer components used for storing data and "analogous to a binder full of static pictures and text and a rolodex of updateable customer information," (A0009), misses the point that the claimed invention of claim 1 of the '739 patent comprises an inventive combination of computer implemented elements comprising a selection device operatively connected to an active database configured to electronically store customer information (*e.g.*, customer answers to a plurality of questions related to at least one of a desired feature and desired use by the customer of a product for sale) obtained from a user interface, and also operatively connected to a static database storing text and/or pictures relating to the product. There is simply nothing generic about this inventive combination, including in the context of the claim as a whole.

The District Court's holding that "considered individually, the claimed

elements do not 'add *enough*' to allow the claim to qualify as patent-eligible," (A0009), is conclusory and lacking in factual support. Further, the District Court commits legal error by merely considering the elements "individually" and by failing to consider the claims as a "whole." *See Alice*, 134 S. Ct. at 2355 n.3 ("Because the approach we made explicit in *Mayo* considers all claim elements, individually and in combination, it is consistent with the general rule that patent claims 'must be considered as a whole.'" (quoting *Diehr*, 450 U.S. at 188).

In evaluating whether there is an "inventive concept" in a claim, courts must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. The inquiry looks to the presence of "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'" *Id*. An element or combination of elements is not an inventive concept if it "amounts to a mere instruction to 'implement' an abstract idea 'on a computer'" or simply to "apply it." *Id*. at 2357–58.

When elements of claim 1 of the '739 patent are viewed individually and collectively in the context of the claim as a whole, it has inventive, unconventional, novel and meaningful limitations.  As noted above, the prior art was deficient including because "one size fits all" proposals, even those generated by computers,

comprising products in various environments were ineffective and costly. Claim 1 of the '739 patent addresses this problem with a method comprising a computer program comprising instructions that cause a processor to automatically select, in response to received answers, an image of a product, an image of an environment in which the product is to be used, and a text segment; with the processor integrating the images and text segment into a customized proposal for the sale of the product, such that a single composite visual output shows the product in the product environment along with the text segment; wherein the single composite visual output is generated by a selection device operatively connected to an active database storing customer information obtained via a user interface, and operatively connected to a static database, the processor dynamically building a template and utilizing the selection device to fill in the template to produce the single composite visual output.

Claim 61 of the '776 patent addresses the same deficiencies in the prior art in a different way. When claim 61 of the '766 patent is viewed individually and collectively in the context of the claim as a whole, it has inventive, unconventional, novel and meaningful limitations which comprise a computer implemented method of generating a customized proposal comprising a computer presenting the customer with a plurality of questions relating to features and uses of the equipment, the computer receiving in the computer a plurality of answers to the questions, the computer selecting and retrieving a stored equipment picture, equipment

environment picture, and text segment in response to at least one of the answers; and the computer automatically compiling said pictures and text segments into a customized proposal.

The District Court also erred in not finding the *DDR Holdings* case applicable. *See DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). In *DDR Holdings,* the claimed invention was patentable because it was "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* Like the claims at issue in *DDR Holdings*, the inventions claimed by claim 1 of the '739 patent and claim 61 of the '776 patent are necessarily rooted in computer technology because computer technology is the only way to automatically or dynamically compile templates or proposals. However, like the claims at issue in *DDR Holdings,* the subject claimed inventions use computer technology to overcome the shortcomings of prior art proposal generation systems, including computerized prior art proposal generation systems, which lacked, among other things, the ability for the computer to select the appropriate images and text, or to automatically or dynamically generate customized proposals comprising a product in a selected environment based upon customer expression of interests. As such, the subject claims overcome a technical problem per *DDR Holdings* and they also "effect an improvement in any other technology or technical field." *See Alice*, 134 S.Ct. at 2359. Further, the claim elements noted above with

respect to claim 1 of the '739 patent and claim 61 of the '776 patent are precisely the type of "inventive concept" that can render an otherwise "abstract idea" patentable. See *DDR Holdings, LLC*, 773 F.3d at 1258 (noting that claims that do not "recite a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations, such as the claims in *Alice, Ultramercial, buySAFE, Accenture,* and *Bancorp* . . . [are] patent-eligible under § 101").

The District Court's error on these issues of "inventive concept," "meaningful limitations," "conventional activity," and "not add[ing] enough" is especially troublesome given the history of Claim 1 of the '739 patent withstanding challenges to its novelty and non-obviousness. In the *Hyundai* litigation, the defendants moved for JMOL of invalidity, focusing on four limitations of the '739 claims that Hyundai asserted were obvious or anticipated: "automatically selecting"; "single composite visual output"; "selection device"; and "dynamically building a template." (A0392-A0418). The U.S. District Court for the Eastern District of Texas denied Hyundai's motion, "find[ing] that HMA has failed to present clear and convincing evidence that a reasonable juror could not have upheld the validity of the asserted claims." *Id*. This holding was affirmed on appeal.

Thus, claim 1 of the '739 patent has previously withstood a jury verdict, motions for JMOL, and appellate review on the issues of obviousness and novelty.[7] Had the claim 1 of the '739 patent been directed to a conventional activity, or if it lacked meaningful limitations or inventive concept, its claims would not have withstood these validity challenges. The same holds true for the closely related '776 patent, which shares an almost identical common specification. At a minimum, with all inferences in favor of the CWC, these facts (alone or combined with the lack of any facts supporting the District Court's holding) require reversal of the District Court's erroneous holding that the subject claims lack "inventive concept" or "meaningful limitations," were "well-understood, routine, conventional activity" and/or did not "add enough" to make the claims patent-eligible.

As Justice Breyer pointed out in *Mayo*, "in evaluating the significance of additional steps, the § 101 patent-eligibility inquiry and, say, the § 102 novelty

---

[7] CWC submits that the strong evidence of novelty and non-obviousness of claim 1 of the '739 patent is compelling evidence for reversal. However, to the extent Appellees contend that this strong evidence novelty and non-obviousness was somehow overcome by the District Court's unsupported and conclusory determination that certain claim elements were "conventional" or lacked "inventive concept," or that these statements by the District Court were somehow a determination that novelty was lacking, than as an alternative basis for relief, the District Court erred in basing its decision on such a determination. *See Cogent Med., Inc. v. Elsevier Inc.,* Nos. 13–4479, 4483, 4486, —— F.Supp.3d ——, —— n. 3, 2014 WL 4966326, at *4 n. 3 (N.D.Cal. Sept. 30, 2014) (examining Supreme Court precedent and concluding the inventive feature question is "better understood as referring to the abstract idea doctrine's prohibition on patenting fundamental truths, whether or not the fundamental truth was recently discovered").

inquiry might sometimes overlap." *Mayo*, 132 S.Ct. at 1304. Here that overlap compels reversal of the District Court's ruling, particularly at the early pleadings stage of the case. An instructive district court ruling may be found in the case of *Ameritox, Ltd. v. Millenium Health*, LLC, 3:13-cv-00832-wmc, Doc No. 440 (W.D. Wis. April 24, 2015). In *Ameritox*, the district court correctly held that "there is enough in the combination of the elements in the '680 patent to get it over the patent eligibility threshold under current law, particularly in light of the jury upholding the patent on § 102 and § 103 grounds." *Id.* at p. 6. The correct reasoning of the *Ameritox* case is applicable here, and especially for judgment on the pleadings, when all inferences should be in CWC's favor, the correct reasoning of *Ameritox* compels reversal of the District Court's Section 101 ruling on the pleadings.

As explained above, the asserted claims include meaningful limitations restricting the invention to specific applications for automatically and dynamically generating specific types of customized proposals in specific ways. Thus, they are patentable. *See, e.g., Zoltek Corp. v. United States*, No. 96-166 C, 2014 WL 1279152, at *4 (Fed. Cl. Mar. 31, 2014) (finding challenged patent claims cover patent eligible subject matter because they do something significant beyond state a law of nature, i.e., they direct application of that law to produce a certain product).

**C. The District Court Erred in Disregarding Meaningful Claim Limitation when it "Reduced" the Claims to their "Conceptual Elements."**

The District Court Erred when it "reduced" the claims to their "conceptual elements," which contributed to the District Court's error in finding the claims to be directed to an abstract idea and, alternatively, contributed to the District Court's error in overgeneralizing and oversimplifying the claims, which is discussed in the Subsection below.  On this "conceptual elements" issue, the District Court stated as follows:

> Reduced to its conceptual elements, Claim 61 of the '776 Patent recites a computer-implemented method to (1) present questions to, and receive answers from, a customer regarding products for sale; (2) based on at least one answer, select a picture of the product, a picture of the product environment, and a textual product description; and (3) put the pictures and text into a single visual output as part of a customized proposal for sale. '776 Patent at 50:54–52:02. The claim also states that the pictures and text are stored on a computer. *Id*. Further, Claim 1 of the '739 patent recites a computer program product configured to perform the same conceptual steps but also adds that customer information is stored in an "active database." '739 Patent at 39:19–49.

(A0008).

The District Court's overgeneralized and oversimplified recitation of Claim 61 of the '776 patent omits the material, meaningful and inventive limitations, including the computer automatically compiling the equipment picture, equipment environment picture and text segment into the customized proposal based upon the customer's answer(s).

The District Court's overgeneralized and oversimplified recitation of claim 1 of

the '739 patent is worse. Here the District Court erroneously found that the only difference between claim 61 of the '776 patent and claim 1 of the '739 patent was that claim 1 "adds that customer information is stored in an 'active database.'" (A0008).

The District Court's overgeneralized and oversimplified recitation of claim 1 of the '739 patent omits multiple material, meaningful and inventive claim limitations, including the computer program comprising instructions that cause a processor to *automatically*[8] select, in response to received answers, a product image, environment image and text segment into a *customized proposal* comprising a *single composite visual output* that shows the product in the product environment along with the text segment; wherein the *single composite visual output* is generated by a *selection device* operatively connected to both an *active database* which *stores customer information* obtained via a *user interface* and a *static database* comprising text and/or images; and wherein the processor *dynamically* builds a *template* and utilizes the selection device to fill in the *template* to produce the tangible *single*

---

[8] *See Ameranth, Inc. v. Genesis Gaming Solutions, Inc.,* Case No. SACV 11- 00189 AG (RNBx) (C.D. Cal.) (Nov. 12, 2014) (D.I. 215) (denying motion for summary judgment of invalidity under § 101 and ruling "[b]ut automation of manual tasks is not necessarily abstract. U.S. Patent No. 72 (1794) to Eli Whitney for a cotton gin is one familiar example of a solidly tangible automating machine. Of course, one could posit a way of drafting even a claim to a cotton gin in a way that renders it abstract: 'a machine comprising metal and wood configured to remove cotton seeds from cotton fiber.'").

*composite visual output*.

As noted above, any claim can be stripped down, simplified, generalized, or paraphrased to remove all of its concrete limitations, until at its core, something that could be characterized as an abstract idea is revealed. The requirement to consider claims as a "whole" presupposes that Courts will not overgeneralize and oversimplify the claims, thus disregarding material, meaningful and inventive claim limitations. The District Court's error in this regard is sufficient grounds to reverse its Orders; however, this error also compounded itself in leading the District Court to erroneously identify an overgeneralized and oversimplified abstract idea, which it erroneously determined to be unpatentable.

Contrary to the District Court's oversimplified analysis, when the subject claims are examined as an ordered combination, it is evident there was an inventive concept in the combination of the steps. *See, e.g.*, *Diehr*, 450 U.S. at 188 ("[A] new combination of steps in a process may be patentable even though all the constituents of the combination were well known and in common use before the combination was made."); *Oleksy v. Gen. Elec. Co.*, No. 06-C-01245, 2013 WL 3233259, at *5 (N.D. Ill. June 26, 2013) ("Oleksy's process is patentable despite its reliance on mathematical equation because of the way the equation is integrated into a process that also uses steps that are not obvious, already in use or purely conventional").

**D. Even if the District Court was Correct in Distilling an Abstract Idea from '739 claim 1 and '776 claim 61, the Abstract Idea that it Distilled was Erroneously Broad, thus Causing the District Court to Reach Erroneous Conclusions Regarding Unpatentability.**

The District Court erroneously and overbroadly held that the "abstract idea" embodied by two claims from two different patents was the same thing, namely "creating a customized sales proposal for a customer." (A0007-A0008). This oversimplified and overgeneralized characterization of the claimed invention is fundamental to the District Court's erroneous conclusion that the subject claims are unpatentable. However, "[i]t is fundamentally improper to paraphrase a claim in overly simplistic generalities in assessing whether the claim falls under the limited 'abstract ideas' exception to patent eligibility under 35 U.S.C. § 101. Patent eligibility must be evaluated based on what the claims recite." *CyberFone Systems, LLC v. Cellco P'ship*, 885 F. Supp. 2d 710, 716 (D. Del. 2012). The District Court's oversimplified and overgeneralized characterization of the claimed invention erroneously omits the material, meaningful and inventive claim limitations noted in Subsection C immediately above, and thus violates the Supreme Court's guidance in *Alice, Mayo,* and *Diehr. See Alice*, 134 S. Ct. at 2355 n.3 ("Because the approach we made explicit in *Mayo* considers all claim elements, individually and in combination, it is consistent with the general rule that patent claims 'must be considered as a whole.'") (quoting *Diehr*, 450 U.S. at 188).

**E. The District Court Erred in Holding that the Steps Performed by the Claimed Computer Elements "could easily be performed by a human."**

The District Court erred in holding that the steps performed by the claimed computer elements could easily be performed by a human. (A0008). The claims at issue go far beyond what the District Court erroneously characterized as a computer instead of a "human salesman asking customers about their preferences and then creating a brochure from a binder of product pictures and text and using a rolodex to store customer information." (A0008).

Here the District Court's erroneous oversimplification and overgeneralization of the claims, as described in Subsections C and D above, again manifests itself. A human could conceivably compile customized proposals with considerable effort. However, as to claim 61 of the '776 patent, a human could not *automatically* compile an equipment picture, equipment environment picture and text segment into the customized proposal based upon a customer's answer(s). Only a computer could perform this function. As to claim 1 of the '739 patent, a human could not *automatically* compile the equipment picture, equipment environment picture and text segment into the customized proposal comprising a single composite visual output that shows the product in the product environment along with the text segment; nor could a human do so by drawing from an active database which stores customer information obtained via a user interface or a static database comprising text and/or images; nor could a human *dynamically* build a template to be filled to

produce the single composite visual output.  As a practical matter and under any

realistically conceivable set of circumstances, a human simply cannot perform these

steps or functions. *See, e.g., TQP Development, LLC v. Intuit Inc.*, 2014 WL 651935,

*4, 7, 2:12–CV–180–WCB (E.D. Tex. Feb. 19, 2014) (Bryson, J.) (finding claim at

issue patent eligible subject matter where, among other things, there was a "several-

step manipulation of data that, except perhaps in its most simplistic form, could not

conceivably be performed in the human mind or with pencil and paper"); *California*

*Institute of Technology v. Hughes Communications Inc.,* 59 F.Supp.3d 974, 994 n.

19 (C.D.Cal. 2014) ("It is as fruitless to say that a human could use pencil and paper

to perform the same calculations as a computer … any effort on the part of a human

will only be a symbolic representation. The effort will not produce the same effect

as executing a computer program...").

### F.  The District Court Erred in Holding that Claims Embody "longstanding commercial practices," Including of the Type at Issue in *Alice* and *Bilski*.

The District Court erred in holding that the subject claims embody

"longstanding commercial practices," including of the type at issue in *Alice* and

*Bilski*. (A0008).  Here the District Court did not explain its reasoning, which is

reason enough for reversal.[9]  The only plausible explanation for the District Court's

---

[9] In order for this Court to perform an appellate review, it must be furnished with "sufficient findings and reasoning to permit meaningful appellate scrutiny" and the district court must "supply the basis for its reasoning sufficient for a meaningful review." *See Nazomi Communications, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364,

erroneous conclusion is that it conflated customized proposals with the specific computer implemented apparatus and method for compiling certain customized proposals covered by claim 61 of the '776 patent and claim 1 of the '739 patent, respectively.  There was no evidence before the District Court, and certainly no evidence was cited in its Orders, that the claimed apparatus and method involve longstanding commercial practices.  Simply put, the material, meaningful and inventive claim limitations noted in Subsection B above are not longstanding commercial practices.

At a minimum, there was not clear and convincing evidence that the claimed apparatus and method were fundamental or long prevalent in any industry. As noted above, on a motion to dismiss, all inferences are to be made in favor of the non-movant CWC.  The fact that the inventions of the patents at issue were developed to overcome deficiencies in conventional prior art proposal systems belies the notion that they are directed to longstanding commercial practices.  Here both patents, especially the '739 patent, have long lists of prior art that their claims were allowed over. (A26-27, A97-98).  Moreover, as noted above, claim 1 of the '739 patent has previously withstood a jury verdict, motions for JMOL, and appellate review on the issues of obviousness and novelty.  Had the claim 1 of the '739 patent been directed to a longstanding commercial practice, its claims would not have withstood these

---

1371 (Fed. Cir. 2005).

validity challenges. At a minimum, with all inferences in favor of the CWC, these facts (alone or combined with the lack of any facts supporting the District Court's holding) require reversal of the District Court's erroneous holding that the claims are directed to longstanding commercial practices.

Further, it was erroneous for the District Court to hold, including without any facts or analysis,[10] the inventions covered by the subject claims are "of the type at issue in *Alice* and *Bilski*." (A008). In *Alice*, the challenged claims were directed to a method to perform an "intermediated settlement." *See Alice Corp.*, 134 S. Ct. at 2352, 2355. The Court noted that the evidence showed that performing an intermediated settlement was "a building block of the modern economy" and "[t]hus," the claims were directed to an abstract idea. *See id*. at 2356.

In *Bilski* the challenged claims were directed to a method to hedge against the financial risk of price fluctuations. *Bilski*, 561 U.S. at 611. The evidence there showed that "hedging is a fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class" and "therefore" the claims were directed to an abstract idea. *Id*. In other words, whether a claim is directed towards an abstract idea for the purposes of this analysis considers whether the inventors are claiming a method for doing something long prevalent and fundamental in the relevant art.

---

[10] *See Nazomi Communications*, 403 F.3d 1364.

In stark contrast, the asserted claims in this case are directed towards the novel apparatus and method, respectively, described in Subsection B above.  Further, the apparatus of claim 1 of the '739 patent, which is based upon the common specification shared by both patents, has withstood multiple levels of prior art challenge.

For the foregoing reasons, the District Court's conclusion that the subject claims embody "longstanding commercial practices," including of the type at issue in *Alice* and *Bilski*, was unfounded and erroneous.

### G. The District Court erred in finding that the subject claims fail to satisfy the machine-or-transformation ("MOT") test.

The District Court erred in holding that the subject claims do not meet the machine prong of the MOT test. (A0011).  As part of the holistic analysis required by *Bilski*, the "machine or transformation" test serves as a useful non-dispositive "investigative tool." *Bilski*, 130 S.Ct. at 3227. The machine or transformation test asks if a claimed process is (1) tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing. *Id.* at 3225-26. Further, "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope…." *Id*. This Court has stated that a machine "includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result." *In re Ferguson*, 558 F.3d 1359 (Fed. Cir. 2009).  Under this Court's broad definition of

"machine," the "computer" that implements the steps of the "computer implemented method" of claim 61 of the '776 patent is a machine, and further the "computer system" that executes the computer program product of claim 1 of the '739 patent is a machine.

The foregoing "computer" and "computer system" satisfy the MOT test, because it is tied to a particular machine or apparatus; here, the programmed computer that performs the twelve steps set forth above – *i.e.*, a special purpose computer. *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010) ("In order for the addition of a machine to impose a meaningful limit on the scope of a claim, it must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly . . . ."). *See also In re Alappat,* 33 F.3d 1526 (Fed. Cir. 1994) (en banc). At that time, this court observed that "programming creates a new machine, because a general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software." *Id.* at 1545.

Similarly, as explained above, "computer implemented method" of claim "computer implemented method" of claim 61 of the '776 patent cannot be performed without a computer, including a computer performing each of the steps noted above, for example "electronically selecting," "automatically selecting," "automatically

compiling," and "dynamically building."

The District Court's holding that the claimed inventions do not require "complex programming," especially in the context of a May 1992 priority date, is unsupported and erroneous. There was no evidence before the District Court, and none cited in its opinion, to support a conclusion that complex programming would not be require to effectuate the claimed inventions. Especially at the procedural posture of a motion to dismiss, when all inferences are in CWC's favor, there was no clear or convincing evidence to support the District Court's conclusion.

Contrary to the District Court's unsupported conclusion, many of the steps in the challenged claims require complex computer programming in order to accomplish them in a computer environment as claimed. These steps include:

- the "electronically selecting" steps c(i)-c(iii) in claim 61 of the '776 patent;

- "automatically compiling the gather equipment information in the computer into the customized proposal" ('776 patent, claim 61);

- "automatically select, in response to at least one of the received answers, an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and performances that are of particular interest to the customer" ('739 patent, claim 1);

- "integrate the selected images and the selected text segment into a proposal for the sale of the product customized to the specific customer such that a single composite visual output can be generated that shows the product in the product environment along with said text segment" ('739 patent, claim 1); and

- "wherein the single composite visual output is generated by . . . the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual output" ('739 patent, claim 1).

Due to the complexity of programming these steps, the specifications of both the '776 and '739 patent recommend the use of Object Oriented Design, which at the time of filing of the initial applications was "a fairly new programming method." ('776/4:39-63; '739/4:22-46.) In addition to requiring complex programming, in each of these elements the claims are also tied to a computer in a specific way and the computer "plays a significant part in permitting the [claims of the 'patents-in-suit] to be performed," therefore, the claims meet the machine prong of the machine-or-transformation test and are patent eligible.[11]

Further, the subject claims satisfy the "transformation" prong of the MOT test because they apply to manipulations of image and text data. In *In re Bilski,* this Court held that the data manipulated must transform either a "physical object or substance, or an electronic signal representative of any physical object or substance." *In re Bilski*, 545 F.3d 943, 964 (Fed. Cir. 2008) (en banc). In the subject claims,

---

[11] Additionally, these limitations, when considered together, satisfy all four patentability criterion of *Alice*, even if the claims were otherwise directed to an abstract idea – they show: (i) an inventive concept, (ii) more than a drafting effort designed to monopolize the abstract idea; (iii) improving an existing technological process; and (iv) "a 'new and useful' application of the idea." *Alice,* 134 S. Ct. at 2357 (quoting *Benson*, 409 U.S. at 67).

product pictures, product environment pictures and text segments are transformed into a single composite visual output and a customized proposal. Thus, they meet the test set forth in *In re Bilski*. In its Order granting the Section 101 motion (A0002-A0013), the District Court erroneously failed to address the transformation prong of the MOT test, despite the fact that CWC had argued that issue. (A0506) ("There is a customized proposal that's created. There is a transformation, so the cases that the Defendants cite are an opposite.").

The fact that the subject claims meet the MOT test provides further support for the District Court's erroneous 101 ruling being reversed.

## H. The Asserted Claims Are Patent-Eligible Because They Do Not Preempt A Natural Law Or Abstract Idea.

An important, if not the most important, purpose of the two-part analysis set forth in *Alice* is to identify claims that improperly tie up the building blocks of human ingenuity. *See Alice Corp.*, 134 S. Ct. at 2354. In other words, courts should keep in mind that the focus of this patentable subject matter inquiry is preemption. *See id*. The fundamental goal of this analysis is to distinguish between claims that preempt the use of underlying ideas or laws of nature and those that integrate those ideas or laws of nature to claim something more. *See id.; Mayo*, 132 S. Ct. at 1301. Claims that do not preempt the use of underlying ideas or laws of nature are eligible for patent protection. *Alice Corp.,* 134 S. Ct. at 2354-55; *Mayo*, 132 S. Ct. at 1303.

At a minimum, no preemption is present with the subject claims due to the

substantive and novel limitations in the subject claims, as noted in Subsection B above. The subject claims do not improperly inhibit further discovery by tying up the building blocks of human ingenuity or technological work. *Alice Corp.*, 134 S. Ct. at 2354-55; *Mayo*, 132 S. Ct. at 1294, 1303.

At a minimum, it would be erroneous to conclude that the subject claims preempt the abstract idea identified by the District Court, which was "the asserted claims are directed to the abstract idea of creating a customized sales proposal for a customer" (A0002). The multiple limitations in each claim set forth in Subsection B above provide for a specific method and apparatus for creating customized sales proposals. The public is free to create customized proposals, including in accordance with the prior art cited on the patents, in accordance with the prior art discussed in the specification, 776/1:21-2:13-14, or in accordance with the prior art for which the District Court had denied JMOL on invalidity. (A0392-A0418). Further, the public is free to create customized proposals in ways that do not comprise any of the following steps:

- the "electronically selecting" steps c(i)-c(iii) in claim 61 of the '776 patent;

- "automatically compiling the gather equipment information in the computer into the customized proposal" ('776 patent, claim 61);

- "automatically select, in response to at least one of the received answers, an image of the tangible product for sale, an image of an environment in which the product for sale is to be used and a text segment comprised of a description of the product specifications and

performances that are of particular interest to the customer" ('739 patent, claim 1);

- "integrate the selected images and the selected text segment into a proposal for the sale of the product customized to the specific customer such that a single composite visual output can be generated that shows the product in the product environment along with said text segment" ('739 patent, claim 1); and

- "wherein the single composite visual output is generated by . . . the system dynamically building a template utilizing the selection device to fill in the template to produce the single composite visual output" ('739 patent, claim 1).

The District Court's decision (A0002-A0013) commits legal error, or at a minimum it provides an insufficient basis for affirmance on appeal, because it altogether fails to address the issue of preemption. The only mention of preemption was noting that "CWC argues that if the claim "preempted the abstract idea of preparing a sales proposal for a customer as alleged by [Volvo], it certainly would have been found anticipated or obvious in the *Hyundai* case over the prior art that addressed the same fundamental concept." A0012. Actually CWC had made broader arguments, for example:

When the facts are viewed, as they must be on a Rule 12 motion, in the light most favorable to CWC, there are meaningful limitations that preclude the patents-in-suit from impermissibly preempting "the basic tools of scientific and technological work" and "thereby thwarting the primary object of the patent laws." *Alice*, 134 S. Ct. at 2354 (quoting *Association for Molecular Pathology v. Myriad Genetics*, 133 S. Ct. 2107, 2116 (2013)). Defendant presents no evidence that the properly construed claims of the patents-in-suit would pre-empt the field and grant CWC a monopoly over an abstract idea. In fact, the prior art cited in the patents-in-suit remains available for practice by Defendant.

(A0506).

There was no evidence before the District Court, and certainly no evidence cited by the District Court, that subject claims would preempt the field and grant CWC a monopoly over an abstract idea.

The lack of preemption and/or the lack of any analysis of the preemption issue should, alone or in combination with the other errors committed by the District Court, results in reversal of its Section 101 invalidity ruling.

## VIII. CONCLUSION AND PRAYER

For the reasons stated herein, Plaintiff-Appellant, Clear With Computers, LLC, respectfully submits that the District Court's determination of unpatentablity based upon 35 U.S.C. § 101 was erroneous, contrary to the law, and contrary to the facts as set forth in the '776 and '739 patents, and thus it must be reversed.

Dated: June 5, 2015                    Respectfully submitted,

/s/ *John J. Edmonds*
John J. Edmonds
COLLINS, EDMONDS, POGORZELSKI,
SCHLATHER & TOWER, PLLC
1616 South Voss Road, Suite 125
Houston, Texas 77057
Telephone:  (281) 501-3425
Fax:  (832) 415-2535
jedmonds@cepiplaw.com

ATTORNEYS FOR PLAINTIFF-
APPELLANT CLEAR WITH
COMPUTERS, LLC

## VII.    CERTIFICATE OF SERVICE

I, John J. Edmonds, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

On June 5, 2015 a copy of the foregoing Opening Brief of Plaintiff-Appellant was filed electronically with the Clerk of the Court using the CM/ECF System, which will serve via electronic mail notice of such filing to all counsel registered as CM/ECF users.

Upon acceptance by the Court of the electronically filed document, six paper copies will be filed with the Court via courier within the time provided by the Court's rules.

Dated: June 5, 2015                    /s/ *John J. Edmonds*
                                       John J. Edmonds

                                       COLLINS, EDMONDS, POGORZELSKI,
                                       SCHLATHER & TOWER, PLLC

## VIII.    CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPE-FACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 28.1(e)(2)(A), because it contains <u>11,083</u> words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.    This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14 Point Times New Roman.

Dated: June 5, 2014

*/s/ John J. Edmonds*
John J. Edmonds

COLLINS, EDMONDS, POGORZELSKI, SCHLATHER & TOWER, PLLC

**ADDENDUM**

1.  AMENDED FINAL JUDGMENT (*SEE ALSO* IDENTICAL AMENDED FINAL JUDGMENTS AT A0633, A0812, A0996) ..............................A0001

2.  ORDER GRANTING MOTION TO DISMISS (*SEE ALSO* IDENTICAL ORDERS AT A634, A813, A997) .........................................................A0002

3.  ORDER DISMISSING CASE (*SEE ALSO* IDENTICAL ORDERS AT A0646, A0825, A1009) ..........................................................................A0014